No. 27932
No. 27935
No. 27980

**C. M. Morey, d/b/a "Star Motor Freight Lines" v. The Public Utilities Commission of the State of Colorado, and Edwin R. Lundborg, Edythe S. Miller and Sanders G. Arnold as the members thereof; Graves Truck Lines, Inc.; Northwest Transport Service, Inc.; Thacker Bros. Transportation, Inc.; Ephraim Freightways, Inc.; Cargo and Transportation Services, Inc.; Robert L. Harris, d/b/a Las Animas Transfer Co.; Fowler Truck Line, Inc.; Denver-Limon-Burlington Transfer Company; Triangle Freight Co.; A. R. Jackson, d/b/a Jackson Transfer and Storage, Jackson Trucking and Jackson Cartage Company; Regular Route Common Carrier Conference of the Colorado Motor Carriers' Association and Red Ball Motor Freight, Inc.**

(582 P.2d 685)

Decided August 14, 1978.

John P. Thompson, for plaintiff-appellee.

J. D. MacFarlane, Attorney General, David W. Robbins, Deputy, Edward G. Donovan, Solicitor General, John E. Archibold, Special Assistant, for defendants and appellants Public Utilities Commission of the State of Colorado; Edwin R. Lundborg, Edythe S. Miller and Sanders G. Arnold, Commissioners.

Jones, Meiklejohn, Kehl & Lyons, Edward T. Lyons, Jr., for defendants and appellants Graves Truck Line, Inc. and the Regular Route Common Carrier Conference of the Colorado Motor Carriers' Association.

Stockton and Lewis, Truman A. Stockton, Jr., John H. Lewis, Ernest Porter, for defendants and appellants Thacker Bros. Transportation, Inc., Ephraim Freightways, Inc., Cargo and Transportation Services, Inc. and Robert L. Harris, d/b/a Las Animas Transfer Co.

John J. Conway, for amicus curiae The Contract Carriers' Conference.

*En Banc.*

MR. JUSTICE GROVES delivered the opinion of the Court.

The Public Utilities Commission (the Commission) and various carriers appeal a district court order overruling the Commission's denial of common carrier status to the Plaintiff, C. M. Morey, doing business as Star Motor Lines (Star). While we agree that the Commission applied improper guidelines in its decision-making process, the proper remedy is to remand the matter to the Commission for application of appropriate decisional guidelines. Thus, rather than weigh the evidence ourselves as did the trial court, we reverse as to that portion of the district court's order which made independent findings of fact and granted conversions denied by the P.U.C.

Star was operating as a contract carrier over various routes within Colorado. On October 16, 1974 it filed an application with the Commission to convert to common carrier status certain of these contract carrier routes. The Commission granted conversion as to the route between Denver and Colorado Springs but denied the other conversions requested. Star sought review in the district court. The district court reversed the decision of the Commission and entered an order granting additional conversions to common carrier status.[1]

On first glance, this matter might appear to involve only a simple question of whether there is sufficient evidence to support the Commission's decision. More thorough review, however, makes it apparent that the Commission is operating under some mistaken notions as to the present state of the law and has applied improper criteria here.

■  The direction of Colorado law as to the Commission's regulation of common motor carriers was altered by the enactment in 1967 of S.B. 208. Subsection 40-10-105(2), C.R.S. 1973. We discussed the changes created by the enactment of S.B. 208 in our trilogy of opinions announced in 1974; *Miller Bros., Inc. v. P.U.C.,* 185 Colo. 414, 525 P.2d 443; *D &*

---

[1] The Commission also found that Star's operations over the denied routes were with intent to violate the law or in reckless disregard for the law, reaching "prohibited heights." The district court took sharp issue with this finding. Here, the Attorney General, representing the Commission, states: "[T]he Commission's denial of authority for Star to operate over the Southern route as a common carrier does not stand or fall on any issue related to the illegality of Star's operations." Thus, as the Commission does not pursue the issue, we do not reach it.

*G Sanitation, Inc. v. P.U.C.*, 185 Colo. 386, 525 P.2d 455; and *Thacker Bros. Transportation, Inc. v. P.U.C.*, 185 Colo. 438, 525 P.2d 439. Until this statutory enactment, the public policy in issuance of certificates of public convenience and necessity to common carriers was that of "regulated monopoly." *Miller Bros. Inc. v. P.U.C., supra.* S.B. 208 changed the doctrine of "regulated monopoly" to one of "regulated competition" by providing:

"The granting of any certificate of public convenience and necessity to operate a motor vehicle for hire for the transportation of property shall not be deemed to be an exclusive grant or monopoly, and *the doctrine of regulated competition shall prevail.* The commission has authority to grant more than one certificate of public convenience and necessity to operate motor vehicles for the transportation of property over the same route or a part thereof or within the same territory or part thereof if the commission finds that the present or future public convenience and necessity requires or will require such operation." Section 40-10-105(2), C.R.S. 1973 (emphasis added).

Under the doctrine of "regulated monopoly," the controlling consideration in granting a new certificate was whether the existing service was adequate or inadequate. Under the policy of "regulated competition," the controlling consideration is the *public need.* While adequacy of existing service is a factor to be considered, it is no longer the controlling determinant. *Miller Bros., Inc. v. P.U.C., supra.*

Despite the unequivocal language of S.B. 208 and the trilogy of opinions, the Commission, while giving lip service to the doctrine of regulated competition, is still acting under the old doctrine of regulated monopoly. In this case it stated:

"By the enactment of S.B. 208, the General Assembly did not, we believe, intend that the Commission stand aside from any of its original responsibilities, nor abandon, necessarily, all of the principles and policies which have been derived from nearly 50 years' experience in the regulation of motor carriers in this state. Some of these principles deserve reaffirmation at this time."

It then proceeds in effect to follow the principles of regulated monopoly. It apparently treats S.B.208 as being only a one-time reform to relieve the problems of a small group of then operating contract carriers.

The route as to which Star's conversion application was granted had been actively serviced by Star as a contract carrier prior to the enactment of S.B. 208. The routes as to which the application was denied were not so actively serviced until after S.B. 208 was enacted. The Commission places heavy emphasis on its findings of fact that:

"It is not altogether clear when operations were extended from Colorado Springs south to Pueblo, but the buildup of these operations concededly took place from 1970 on, after S.B. 208 was enacted by the Colorado

Legislature. As of the date when that legislation became effective, Star was carrying no freight between Denver and Pueblo. . . .

"Star's operations through the Arkansas Valley route — i.e., from Pueblo east to Lamar, were not commenced until September 3, 1974, approximately one month after the Supreme Court handed down its opinion in *Miller Bros., Inc. v. Public Utilities Commission,* 185 Colo. 414, 525 P.2d 443."

The reason that the Commission places such unjustified emphasis on the fact that Star's build-up of operations on the denied routes took place after the enactment of S.B. 208, is that the Commission has apparently decided that two different standards are to be applied in contract carrier conversion cases. Parties who were active contract carriers over the route in question at the time of the enactment of S.B. 208 are apparently to receive the full benefits of the doctrine of "regulated competition" while parties such as Star are not to be allowed the benefit of S.B. 208, but instead, are to be subject to some sort of watered-down version of the old "regulated monopoly" doctrines. (Throughout the rest of this opinion these two groups shall be referred to respectively as pre-S.B. 208 carriers and post-S.B. 208 carriers.)

Thus the Commission stated:

"The present application, therefore, stands on basically the same footing as any other application in which a carrier is seeking to expand its operations into new territory. In such a case, it is ordinarily incumbent on the applicant to demonstrate not only that its proposed service will serve a useful public purpose responsive to a genuine public need, but that the service being performed by existing carriers in the territory is in some fashion materially inadequate or insufficient. This Star has failed to do. Even assuming *arguendo* that the testimony of his own presently satisfied customers makes out a case of public need, there has been no showing of any substantial inadequacy in the existing service. It is true, of course, that since S.B. 208 a showing of inadequacy is no longer an indispensable element of every case. In several of the prior conversion cases, the adequacy issue was in fact relegated to fairly minor importance. *But those were unusual cases.* They marked the transition from the days of regulated monopoly to a competitive common carrier system. The establishment of a competitive system was the driving consideration in those earlier cases. It was necessary to look beyond the mere adequacy of existing service." (Emphasis added)

The Commission apparently has decided that, except for that exception for pre-S.B. 208 carriers, contract carriers must still prove a substantial inadequacy of existing service in order to convert to common carrier status. The Commission has stated that even if a *public need* can be shown, the application will be denied unless a substantial inadequacy in the present service can be shown. While a showing of substantial

inadequacy of existing service may buttress an application for conversion, it certainly is not a prerequisite to a successful application for a new certificate. *Miller Bros., Inc. v. P.U.C., supra.*

■ There simply is no basis for this position of the Commission. Nowhere in S.B. 208 does it say that the benefits of the "regulated competition" doctrine are to be reserved for only pre-S.B. 208 contract carriers who were actively operating on the route in question at the time of its enactment. While it is true that the plight of those contract carriers existing at the time of the enactment of S.B. 208 may have been the impetus for the reform,[2] there is no indication that the legislature intended the relief to apply to only a small group of existing carriers.

■ Further evidence of the Commission's intent to retain "regulated monopoly" is found in its statement that:

"Carriers providing service responsive to the needs of the public should normally be accorded an opportunity to transport all of the traffic which they can handle, before another service is authorized."

The fact that a common carrier is presently operating on a route does not give it a vested right to keep out all new competition merely because its service is adequate. The Commission, however, apparently believes that, at least as to post-S.B. 208 contract carriers, the existing common carrier does have such a right to prevent conversions.

■ On remand the Commission should reach a decision, properly applying the doctrine of regulated competition. The case then, for the first time, will be in proper posture for review.

Judgment affirmed in part and reversed in part. The district court is directed to remand the cause to the Commission for proceedings consonant with the views expressed in this opinion.

MR. JUSTICE ERICKSON does not participate.

---

[2] *See Miller Bros., Inc. v. P.U.C., supra.*