(706 P.2d 825)

No. 57,254

CHRIS HUNT WATER HAULING CONTRACTOR, INC., *et al., Appellees,* v. STATE CORPORATION COMMISSION of the State of Kansas, *Appellant.*

Opinion filed September 26, 1985.

*John Jay Rosacker*, assistant general counsel, State Corporation Commission, of Topeka, for the appellant.

*William B. Barker*, of Topeka, for the appellees.

Before PARKS, P.J., REES, J., and JEROME HARMAN, C.J. Retired, assigned.

PARKS, J.: The Kansas Corporation Commission (KCC) granted a certificate of convenience and necessity to the Phoenix Trucking Company (Phoenix). The parties who opposed issuance of the certificate, which included Chris Hunt Water Hauling, appealed to the Kearny County District Court pursuant to K.S.A. 66-118d. The district court vacated the KCC action as unreasonable and unlawful and the KCC appeals.

Phoenix is a motor common carrier in the business of hauling crude oil, fresh and salt water in southwestern Kansas. On April 27, 1983, Phoenix filed an application with the KCC for an extension of its certificate of convenience and necessity. Phoenix sought to expand its operations from the five counties in which it was already authorized to do business to seven additional neighboring counties. At the hearing on this application, five other common carriers in the business of hauling fluids used or generated in oil production appeared to oppose extension of Phoenix's authority.

The KCC found that (1) Bill Phoenix had shown by his own testimony that he is fit, willing and able to render the proposed service applied for; (2) Phoenix is seeking authority in counties adjacent to its present authority and has enough equipment to service the area proposed to be served; (3) Phoenix's financial statement supports its testimony that it can add new equipment as the need arises; (4) the protestants failed to show that, if the application was granted, Phoenix would take any business away from them; and (5) the protestants provided no evidence that the granting of the application would be inconsistent with the public convenience and necessity.

Following the granting of the application, an application for

rehearing was denied and the protestants appealed the decision of the KCC to the district court. The district court held that the commission's order was unlawful because it failed to take into account the public's convenience and necessity and was unreasonable because the facts did not reasonably support a finding that the proposed service would be consistent with the public convenience and necessity. The district court further stated that the commission did not err in finding that the applicant was fit, willing and able to perform.

When an order or decision of the KCC is appealed pursuant to K.S.A. 66-118d, our scope of appeal, as well as that of the district court, is limited to determining whether the order is lawful and reasonable. *Southwestern Bell Tel. Co. v. Kansas Corporation Commission*, 233 Kan. 375, 376, 664 P.2d 798 (1983). An order is lawful if it is within the statutory authority of the commission and if the prescribed statutory and procedural rules are followed in making the order; it is generally considered reasonable when based upon substantial competent evidence. *Kansas City Power & Light Co. v. Kansas Corporation Commission*, 9 Kan. App. 2d 49, 50, 670 P.2d 1369, *rev. denied* 234 Kan. 1076 (1983).

At the time Phoenix applied for the extended certificate of convenience and necessity, the statute provided as follows:

"Except as hereinafter provided, it shall be unlawful for any public motor carrier to operate as a carrier of intrastate commerce within this state without first having obtained from the corporation commission a certificate of convenience and necessity. . . .

"If the commission finds that the proposed service or any part thereof is proposed to be performed by the applicant and that the applicant is fit, willing and able to perform such service, the commission shall issue the certificate, except that if the commission finds that evidence shows that the proposed service is inconsistent with the public convenience and necessity, the commission shall not issue the certificate." K.S.A. 1984 Supp. 66-1,114.

Prior to 1982, K.S.A. 66-1,114 stated in pertinent part as follows:

"If the commission finds from the evidence that the proposed service or any part thereof will promote the public convenience and necessity, the commission shall issue the certificate; otherwise such certificate shall be denied. Before granting a certificate to a public motor carrier, the commission shall take into consideration other existing transportation facilities in the territory for which a certificate is sought, and in case it appears from the evidence that the service furnished by existing transportation facilities is reasonably adequate, the commission shall not grant such certificate."

It is readily apparent from the language of the statute that the amendment of K.S.A. 66-1,114 was intended to loosen the regulatory constraints upon entry into the trucking field. However, in order to fully appreciate the significance of the changes effected in K.S.A. 66-1,114, it is important to have an understanding of the context in which they were made.

Since 1935, the motor carrier industry has been closely regulated. The Interstate Commerce Commission had the authority to control rates, routes and entry into the field of interstate trucking while state commissions similarly regulated the activity of intrastate motor carriers. In 1980, a federal law was enacted which changed the regulatory picture for interstate trucking. Motor Carrier Act of 1980, Pub. L. No. 96-296, 94 Stat. 793 (codified in scattered sections of 49 U.S.C. §§ 10101-11902a [1982]). In particular, this act sought to encourage greater competition by relaxing the burden of proof placed on applicants seeking authority to enter the trucking industry or to expand existing operations. Instead of proving that issuance of the requested certificate "is or will be required by the present or future public convenience and necessity" (49 U.S.C. § 307 [1976]), the applicant need only show that he is "fit, willing, and able" and that the service proposed "will serve a useful public purpose." 49 U.S.C. § 10922(b)(1) (1982). The new law directs that a certificate be issued if the applicant makes such a showing unless the Interstate Commerce Commission finds, on the basis of evidence presented by persons objecting to its issuance, that the requested authority is "inconsistent with the public convenience and necessity." Congress intended by these statutory changes to make it easier to enter the trucking field and to shift the burden of proof to those objecting to issuance of a permit when the applicant has established a prima facie case for his fitness. H.R. Rep. No. 1069, 96th Cong., 2d Sess. 3, 14, *reprinted in* 1980 U.S. Code Cong. & Ad. News 2283, 2296. Thus, the federal courts have consistently interpreted the current law concerning the issuance of authority to engage in interstate trucking as placing an initial burden of proof on the applicant to demonstrate his fitness and a useful public purpose to be served. However, once this burden is satisfied protestants must come forward with evidence before the certificate may be denied as inconsistent with public convenience and necessity. See, *e.g.,*

*Containerfreight Corp. v. United States*, 752 F.2d 419, 423 (9th Cir. 1985); *Erickson Transport Corp. v. I.C.C.*, 737 F.2d 775, 776-77 (8th Cir. 1984); *RTC Transp., Inc. v. I.C.C.*, 731 F.2d 1497, 1499 (11th Cir. 1984).

Kansas is among the states (Arizona, California, Delaware, Florida, Idaho, Kansas, Maine, New Jersey, New Mexico, New York, South Dakota, West Virginia, Wisconsin and Wyoming) which reacted to the federal reregulation of interstate trucking by altering its own scheme of regulation for intrastate trucking. Freeman & Beilock, *State Regulatory Responses to Federal Motor Carrier Reregulation*, 35 U. Fla. L. Rev. 56, 69, 70 (1983). Consistent with the federal law, the Kansas legislature loosened regulatory controls over entry into intrastate trucking by requiring only that the applicant prove his fitness for such authority prior to the issuance of a certificate. Once this showing is made, the certificate is to be issued unless the evidence shows that the proposed service would be inconsistent with public convenience and necessity. K.S.A. 1984 Supp. 66-1,114. Unlike the federal provision, the new Kansas statute does not specifically state that the burden of proof is shifted to the protestants to show an inconsistency with public convenience and necessity. However, such a shift of the burden of proof is implicit in the regulatory format, for no such evidence will be heard by the KCC unless persons protesting issuance of the certificate provide it. Furthermore, the legislative history of the Kansas law indicates that it was the intention of the legislature to shift the burden of proof to the protestant once the applicant shows that he is "fit, willing and able to perform." Report on Kansas Legislative Interim Studies to the 1982 Legislature, p. 806. We conclude that in light of the alterations made in the language of the statute and its historical background, K.S.A. 1984 Supp. 66-1,114 requires the commission to issue a certificate if it finds the applicant fit, willing and able to perform the proposed service, unless protestants come forward with evidence demonstrating an inconsistency with public convenience and necessity. Thus, the applicant has the initial burden of persuasion; when that is met, the burden of persuasion shifts to the protestants.

Despite the changes effected in K.S.A. 66-1,114, the district court's order reflects a belief that the commission was obliged to make an affirmative finding that the public convenience and

necessity would be promoted by issuance of the certificate. No such affirmative finding need be made. If evidence is presented in an effort to demonstrate that issuance of the certificate would be inconsistent with public convenience and necessity, the commission must either deny the certificate based on that evidence or make a negative finding that the evidence was insufficient to show an inconsistency with public convenience and necessity and grant the permit. It is precisely this latter option which the commission found applicable to this case. The district court incorrectly held that the commission failed to follow the statutory scope of its authority and the court's conclusion that the commission's order was unlawful is in error. However, since the reversal of the order must be upheld if the court correctly decided that the order was unreasonable, we must also decide whether the commission acted unreasonably by making a finding unsupported by substantial competent evidence.

The district court agreed that the applicant was fit to provide the requested service; thus, the only finding remaining open to review was the commission's negative finding that no showing of inconsistency with public convenience and necessity was made.

While a finding of fact will not be upset on appeal if there is any substantial competent evidence to support it, a negative finding will only be overturned if there is proof of an arbitrary disregard of undisputed evidence or some extrinsic consideration such as bias, passion or prejudice. *Lostutter v. Estate of Larkin*, 235 Kan. 154, 162-63, 679 P.2d 181 (1984). This is true because a negative finding signifies the failure of the party on whom the burden of proof was cast to sustain it. Since it appears that the commission properly placed the burden of proof on the protestants to show an inconsistency with public convenience and necessity, and that it found that they failed to carry this burden of proof, the negative finding should stand unless there was a disregard of undisputed testimony.

All of the protestants' testimony was concerned with the present market for the services sought to be offered by applicant. Each of the protestants is an oil field fluids hauler in the counties requested to be served by Phoenix. They testified that drilling was down in the area and that consequently their revenues were down. They essentially contended that authorization for another hauler in the area would stretch the available business too far

and make it difficult for all of the existing haulers in the area to continue service. In addition to the claim of hardship to the existing carriers through increased competition, the protestants claimed that service to small neighboring counties would also suffer. For example, Keith Brady, of Brady Fluid Service, testified that he serviced 20 Kansas counties including the seven counties sought to be served by applicant. He stated that 30% of his business derived from the seven counties included in Phoenix's application so that his service to the other 13 counties was subsidized by his work in the seven. Thus, he suggested that a loss of business in those seven counties through increased competition would make it difficult for him to serve the other 13 counties, to the detriment of the public. Brady did not present any evidence that there was a shortage of service to those other 13 counties; he simply said that applicant was not proposing to serve them and that it would be difficult for him to do so if he lost business in the seven counties which currently provide 30% of his business.

Bearing in mind that the standard to be considered by the KCC is the *public* convenience and necessity, evidence concerning the difficulties which might be suffered by existing haulers through competition is not sufficient to show an inconsistency with public convenience and necessity. In addition, the testimony concerning the hinted loss of service to small surrounding counties was inconclusive at best. Certainly, the record reflects no undisputed evidence which the commission ignored in concluding that protestants failed to carry their burden of proof. Furthermore, even if the "substantial competent evidence" test is applied, the evidence of an inconsistency with public convenience and necessity fell short. In *Film Transit, Inc. v. I.C.C.*, 699 F.2d 298, 301-02 (6th Cir. 1983), the Court upheld the grant of an interstate certificate by the I.C.C., stating as follows:

"We conclude that Film's argument lacks merit and, accordingly, fails to rebut the applicant's prima facie case. Merely showing that Mistletoe will divert some of Film's revenue and traffic, which, consequently, may make it more difficult for Film to subsidize its rates in smaller communities, is insufficient to demonstrate a harm to the public's convenience and necessity warranting the disallowance of carrier's certificate. See 49 U.S. § 10922(b)(2)(B) ('[T]he Commission shall not find diversion of revenue or traffic from an existing carrier to be in and of itself inconsistent with the public convenience and necessity.'). An economic disadvantage to a competitor is insufficient to deny the applicant's certification. See *J.H. Rose Truck Line, Inc., supra*, 683 F.2d at 950. Paramount concern lies with

the public interest and not with the economic disadvantages to competing carriers which may surface as a result of the Commission's decision to issue an operating certificate. See *Bowman Transportation, Inc., supra,* 419 U.S. at 298, 95 S.Ct. at 448 ('Our decisions have dispelled any notion that the Commission's primary obligation is the protection of firms holding existing certificates.'); *Hunt Transportation, Inc. v. Interstate Commerce Commission,* 636 F.2d 190, 193 (8th Cir. 1980) ('[T]he primary consideration is the interest of the public, and not the relative economic advantages or disadvantages of competing carriers.')."

In this case, like *Film Transit,* all of the protestants' evidence bore more on the difficulties they would face as competitors than on any inconvenience which the public might sustain. Existing holders of trucking permits have no immutable right to be free from competition. See *Bowman Transp. v. Ark.-Best Freight System,* 419 U.S. 281, 298, 42 L.Ed.2d 447, 95 S.Ct. 438 (1974). The district court erred in holding that the KCC order was unreasonable.

We conclude that when, as here, there is a finding by the commission that the applicant is fit, willing and able to perform the proposed service, the burden is upon protestants to present evidence to show that the proposed service is inconsistent with the public convenience and necessity. In the absence of such evidence, the commission shall, under K.S.A. 1984 Supp. 66-1,114, issue the certificate.

Reversed.