387 S.E.2d 841

**STOWERS AND SONS TRUCKING COMPANY, INC.**

v.

**PUBLIC SERVICE COMMISSION OF WEST VIRGINIA and Eugene Roberts & Son, Inc.**

No. 19014.

Supreme Court of Appeals of West Virginia.

Dec. 20, 1989.

Michael L. Keller, Goodwin & Goodwin, J.A. Bibby, Jr., Bibby & Good, Charleston, W.Va., for petitioner Stowers and Son Trucking Company, Inc.

Arden J. Curry, Pauley, Curry, Sturgeon & Vanderford, Charleston, for Eugene Roberts & Son, Inc.

Franklin G. Crabtree, Public Service Com'n of W.Va., Charleston, for Public Service Com'n.

MILLER, Justice:

Stowers and Sons Trucking Company, Inc. (Stowers), appeals from a final order of the Public Service Commission (PSC), which reversed a recommended decision by an administrative law judge and granted

Eugene Roberts & Son, Inc. (Roberts), an amended certificate to operate as a common carrier by motor vehicle for the purpose of transporting tanks and pipe to and from six southern West Virginia counties. Stowers asserts that the PSC misapplied the law by injecting the doctrine of regulated competition into the case and finding that Roberts had made a *prima facie* case of public need. Stowers also contends that the PSC arbitrarily failed to accord proper respect to the decision of the administrative law judge. After a careful examination of the evidence presented below, we agree, and, therefore, we reverse the decision of the PSC.

On March 1, 1988, Roberts, a commercial enterprise based in Lincoln County, West Virginia, obtained a certificate of authority from the PSC to operate as a common carrier by motor vehicle for the purpose of transporting tanks and pipe from Cabell and Putnam counties to Fayette, Logan, Mingo, and Wyoming counties. Roberts had been engaged in contract work primarily consisting of laying pipe lines and digging trenches for oil and gas companies for approximately eight years. On March 28, 1988, Roberts applied to the PSC for an amended certificate to expand its operating authority to haul tanks and pipe within and between Fayette, Kanawha, Logan, McDowell, Mingo, and Wyoming counties.

Stowers has operated as a trucking company for thirty-two years with its base of operations in Lincoln County. It has a certificate of operating authority from the PSC to serve as a common carrier by motor vehicle throughout the state. Stowers, which is engaged in transporting material, including tanks and pipe, for the oil and gas industry, timely protested the issuance of an amended certificate to Roberts.

At an administrative hearing, Maxie L. Roberts, son of Eugene Roberts and a corporate officer of Roberts, testified that his company needed the additional operating authority to meet the requirements of its customers, who were expecting an increase in business in the near future. The evidence showed that in the three months after the issuance of the certificate, Roberts had transported materials on five or six occasions for approximately four customers.

Three other witnesses testified for Roberts. Richard Wyont, production coordinator for a natural gas company, stated that his company had hired Roberts to dig pipelines before it was certified as a common carrier. Mr. Wyont testified that his company used a common carrier to transport pipe about twice a year, usually needed hauling services on short notice, and had used Roberts' hauling service one time. Mr. Wyont testified that he was satisfied with Roberts' service and believed there was a general need for another pipe hauling company in the area, although he had no knowledge of Stowers and was not opposed to using their services in the future.

Donald Pack, a gas foreman with Pennzoil Company in Lincoln County, stated that Roberts had provided excellent transportation service on several occasions and that he believed it would be a convenience to his company and to the public in general to have a second hauling company in the area. On cross-examination, Mr. Pack stated that Pennzoil had routinely used Stowers without complaint. Tom Liberatore, operations manager for an independent oil and gas producer, testified that his company had used Roberts' contract services in the past and would employ Roberts to haul tanks and pipe in Kanawha County if the amended certificate were granted. Mr. Liberatore testified that he had no complaint with Stowers, whose services he had used in the past, but found other haulers more economical for a smaller company.

Kenneth Rainwater, drilling superintendent with FWA Drilling Company (FWA), testified for Stowers. Mr. Rainwater testified that FWA used only Stowers for moving oil and gas field equipment and used seven or eight trucks for 200–300 days a year. Mr. Rainwater testified that he did not see a need for an additional carrier because of the good service FWA had received from Stowers, but was not opposed to another carrier being certified. James Kuhn, an employee of McJunkin Corporation, expressed satisfaction with the

prompt services provided by Stowers, but stated that he would not hesitate to use Roberts' services if the amended certified were issued.

Finally, Wiley Stowers, majority stockholder of Stowers, testified that his company had twenty-seven PSC licensed trucks to provide statewide transportation services. In his view, there was no unmet need. He testified that since 1982, there had been a downturn in the oil and gas business, idling approximately one-half of his trucks on any given day, and that in 1988, his business had declined. Mr. Stowers was of the opinion that there was no unmet need and that his company could handle twice as much business as it had.

The administrative law judge concluded that Roberts was fit and proper to hold additional authority and had financial resources to provide expanded services. However, he further concluded that Roberts had not made a *prima facie* case of any need for service that had not been met by the existing certified carrier. Roberts filed exceptions to the administrative law judge's order. The PSC reviewed the record and reversed the administrative law judge, relying on *Mac's Wrecker Serv., Inc.*, M.C. Case No. 3358 (December 1979), and concluding that the public interest would be served by an additional carrier. Stowers appeals from that final order.

■ The standard of review for final orders by the PSC, set forth in *United Fuel Gas Co. v. Public Serv. Comm'n*, 143 W.Va. 33, 99 S.E.2d 1 (1957), applies to certification of common carriers, as we stated in the single Syllabus of *Browning–*

*Ferris Indus. v. Public Serv. Comm'n*, 175 W.Va. 52, 330 S.E.2d 862 (1985):

" 'In a proceeding for a certificate to operate as a common carrier an order of the Public Service Commission will not be disturbed on appeal unless its findings are contrary to the evidence, are without evidence to support them, are arbitrary or result from a misapplication of legal principles.' Syllabus Point 1, *Weirton Ice & Coal Supply Co. v. Public Serv. Comm'n*, 161 W.Va. 141, 240 S.E.2d 686 (1977)."

We observe initially that the PSC has ignored the clear mandate of our Common Carrier by Motor Vehicle Act, W.Va.Code, 24A–2–5(a) (1980), which contains the procedure necessary to obtain a certificate to operate as a common carrier by motor vehicle.[1] This statute, among other things, requires that if the PSC finds "from the evidence that the public convenience and necessity require the proposed service or any part thereof, it shall issue the certificate[.]" Pertinent additional language is also found at the end of subsection (a):

"[T]he commission shall also take into consideration existing transportation facilities in the territory for which a certificate is sought, and in case it finds from the evidence that the service furnished by existing transportation facilities is reasonably efficient and adequate, the commission shall not grant such certificate."

These two considerations are obviously interrelated. If the existing transportation facilities are reasonably efficient and adequate, then there would be no basis for finding that the public convenience and ne-

1. W.Va.Code, 24A–2–5(a), states, in pertinent part:

"*Required; application; hearing; granting.*—It shall be unlawful for any common carrier by motor vehicle to operate within this state without first having obtained from the commission a certificate of convenience and necessity. Upon the filing of an application for such certificate, the commission shall set a time and place for a hearing on the application.... After the hearing or waiver by the commission of the hearing, if the commission finds from the evidence that the public convenience and necessity require the proposed service or any part thereof, it shall issue the

certificate as prayed for, or issue it for the partial exercise only of the privilege sought, and may attach to the exercise of the right granted by such certificate such terms and conditions as in its judgment the public convenience and necessity may require.... Before granting a certificate to a common carrier by motor vehicle the commission shall take into consideration existing transportation facilities in the territory for which a certificate is sought, and in case it finds from the evidence that the service furnished by existing transportation facilities is reasonably efficient and adequate, the commission shall not grant such certificate."

cessity would require an additional service. We acknowledged this dual proposition in one of our earliest motor carrier cases, *Monongahela West Penn Public Serv. Co. v. State Road Comm'n of West Virginia*, 104 W.Va. 183, 192, 139 S.E. 744, 748 (1927):

> "Courts and Commissions construing statutes similar to ours have uniformly held that the necessity and convenience referred to is that of the public generally as distinguished from that of a number of individuals or a community, and that the inadequacy of the existing service and the convenience or necessity of the proposed service must both affirmatively appear from the evidence." [2]

The stated legislative purpose in regulating motor carriers contained in W.Va.Code, 24A–1–1, is threefold: (1) to "[p]rotect the safety and welfare of the traveling and shipping public"; (2) to "preserve, foster and regulate transportation"; and (3) to "provide the traveling and shipping public transportation agencies rendering stabilized service at just and reasonable rates."

We spoke to the policy behind our motor carrier regulatory scheme in *Charleston Transit Co. v. Public Serv. Comm'n*, 142 W.Va. 750, 759, 98 S.E.2d 437, 442–43

(1957): "While the convenience of the public is the paramount consideration of the law, if it is accompanied by necessity, this Court has always recognized that an incident to the regulation of a public monopoly is the protection of a certificate holder against unnecessary duplication or competition."

Consistent with these principles, we recognized in Syllabus Point 2, in part, of *Weirton Ice & Coal Supply Co. v. Public Serv. Comm'n*, 161 W.Va. 141, 240 S.E.2d 686 (1977), that the "Commission, if it finds from the evidence adduced at a hearing that public convenience and necessity require the proposed service, may grant a certificate[.]" We also pointed out that the PSC in *Weirton Ice* found "that the existing transportation facilities were not 'reasonably efficient and adequate.'" 161 W.Va. at 147, 240 S.E.2d at 690.[3]

In this case, the PSC has utilized what it terms the "regulated competition theory," which it stated it first applied in *Mac's Wrecker Serv., Inc., supra.*[4] In its final order, the PSC explained: "Pursuant to this theory, a carrier seeking certification to operate in West Virginia need not demonstrate that the existing service is inadequate, but must only show that the public

---

2. At the time of the *Monongahela West Penn Public Serv. Co.* case, motor carrier regulation was under the jurisdiction of the State Road Commission. The particular statute in issue in that case contained this language:

> "No such certificate of convenience shall be issued by the commission until it shall be established to the satisfaction of the commission, after proper investigation, that the privilege so sought by the applicant is necessary or convenient for the public, and that the service so proposed to be rendered by the applicant is not being adequately performed at the time of such application by any other person, partnership or corporation." 1925 W.Va. Acts ch. 17, § 82 at line 195, *et seq.*

In 1937, the regulation of motor carriers was transferred to the PSC with language substantially similar to what is now found in W.Va. Code, 24A–2–5(a). *See* 1937 W.Va. Acts ch. 50, art. 1, § 5.

3. *Weirton Ice* involved a territorial certificate to haul in Hancock, Brooke, and Ohio counties. We discussed the language in W.Va.Code, 24A–2–5(a), relating to a common carrier holding a route certificate, which provides that if the PSC finds the service to be inadequate the existing

route certificate holder "shall be given a reasonable time" to remedy the inadequacy. We found this provision to be inapplicable to a territorial certificate and stated in Syllabus Point 3 of *Weirton Ice*:

> "The opportunity to remedy any inadequacy in existing service, as provided in *W.Va.Code*, 1931, 24A–2–5(a), as amended, is afforded only to a common carrier holding a certificate of convenience and necessity over a route or routes and is available to such carrier only if the applicant is seeking a certificate to operate over such route or routes."

A territorial certificate is involved in this case.

4. It is interesting that the PSC's decisions on regulated competition have caused at least one group of commentators to state: "Because West Virginia now assumes competition to be in the public interest, its [PSC] has eased applicant entry requirements." J. Freeman & R. Beilock, *State Regulatory Responses to Federal Motor Carrier Reregulation*, 35 U.Fla.L.Rev. 56, 72 (1983) [citing as authority in note 134, "*see* Public Serv. Comm'n of W.Va. Motor Carrier, Case Nos. 20376, 20377 at 6 (October 26, 1981)"].

interest would be served by certification." The PSC's final order indicates that once proof is made that the public interest would be served, the applicant has made a *prima facie* case. The PSC's order then comes to this conclusion:

"The Commission has repeatedly held that a *prima facie* case of need may be rebutted only with evidence that: (1) the existing service is adequate, and (2) the certification of the applicant would harm the Protestants [*sic*] to an extent contrary to the public interest. This harm must be documented by financial information, other than unsupported assertions. In this case, the Protestant [*sic*] presented no financial documentation that could support a conclusion that the *prima facie* case of need was rebutted."[5]

In this case, the PSC's final order does not discuss the origins of the regulated competition doctrine. However, in its opinion in *Mac's Wrecker*, the PSC made these statements:

"Other States such as New Hampshire, Washington, and Colorado have adopted the policy of 'regulated competition' in motor carrier cases. Under the doctrine of 'regulated competition' the controlling consideration is the public need. While adequacy of existing service is a factor to be considered it is no longer the controlling determinant. *Morey v. Pub. Util. Commission* [196 Colo. 153], 582 P.2d 685 (1978); *New England Household, etc. v. Public Utilities*, 117 N.H. 1038, 381 A.2d 745 (1977); *Black Ball Freight v. U. & T. Comm'n*, 74 Wash.2d 871, 447 P.2d 597 (1968).

West Virginia has adopted the policy of 'regulated competition' in common carrier cases involving a defined territory. *Weirton Ice & Coal Supply Co. v. Public Service Comm'n*, [161 W.Va. 141,] 240 S.E.2d 686 (1977).[6] Also W.Va.Code [§] 24A–2–5 as amended 1979.

\* \* \* \* \* \*

"The absence of a finding of inadequacy of existing carrier services is not alone sufficient to bar the issuance of a certificate when other factors justify a finding of public convenience and necessity. The adequacy of existing services is merely a factor to be considered by the Commission."

What the foregoing statements by the PSC in *Mac's Wrecker* fail to take into account is that in each of these jurisdictions, the motor carrier statutes contained either express language recognizing competition or regulated competition or general language that did not require any consideration to be given to existing services.

The Colorado Supreme Court in *Morey v. Public Utilities Comm'n*, 196 Colo. 153, 582 P.2d 685 (1978), made this point abundantly clear. It recognized that its law "was altered by the enactment in 1967 of S.B. 208.... Until this statutory enactment, the public policy in issuance of certificates of public convenience and necessity to common carriers was that of 'regulated monopoly.'" 196 Colo. at 155–56, 582 P.2d at 686–87.[7] The court in *Morey*, 196 Colo. at 157, 582 P.2d at 687, then went on to state, quoting from its statute, that:

---

5. It would appear proper for the PSC to allocate the burden of proof in the absence of any express statutory language. The legislature in W.Va.Code, 24A–2–5(b), has clearly stated that "in establishing that public convenience and necessity do exist the burden of proof shall be upon the applicant." It appears that the PSC has placed the burden on the protestant to prove that existing services are reasonably efficient and adequate. In the face of the statutory language that if the existing services are "reasonably efficient and adequate, the commission shall not grant such certificate," we seriously question whether the PSC can erect a second standard that the existing certificate holder must show actual harm documented by finan-

cial information. Furthermore, as a practical matter, it would be difficult to produce actual financial figures showing harm before the applicant was operating.

6. We have previously discussed *Weirton Ice,* and we reject the PSC's conclusion that it permits "regulated competition."

7. The court in *Morey*, 196 Colo. at 156, 582 P.2d at 687, defined "regulated monopoly" as follows: "Under the doctrine of 'regulated monopoly,' the controlling consideration in granting a new certificate was whether the existing service was adequate or inadequate."

"S.B. 208 changed the doctrine of 'regulated monopoly' to one of 'regulated competition' by providing:

'The granting of any certificate of public convenience and necessity to operate a motor vehicle for hire for the transportation of property shall not be deemed to be an exclusive grant or monopoly, and *the doctrine of regulated competition shall prevail.*"

(Emphasis in original).

Finally, *Morey*, 196 Colo. at 156, 582 P.2d at 687, gave this explanation of the "regulated competition" doctrine: "Under the policy of 'regulated competition,' the controlling consideration is the *public need.* While adequacy of existing service is a factor to be considered, it is no longer the controlling determinant." (Emphasis in original).

The doctrine of regulated competition was not at issue in *New England Household Moving & Storage, Inc. v. Public Utilities Comm'n*, 117 N.H. 1038, 381 A.2d 745 (1977), cited by the PSC in *Mac's Wrecker*. There the court was confronted with a statutory interpretation and burden of proof question. It found that its motor carrier statute "does not specify the criteria the commission should employ in determining whether the proposed services are or will be required by the public convenience and necessity." 117 N.H. at 1040, 381 A.2d at 747. After reviewing the case, the New Hampshire court concluded that "the adequacy of existing services is merely a factor to be considered." 117 N.H. at 1040, 381 A.2d at 747. Consequently, it was held to be error to require the applicant "to prove the inadequacy of existing carrier service as a prerequisite to meeting its burden of proof on the question of public convenience and necessity." 117 N.H. at 1041, 381 A.2d at 747.

Another general statute was involved in *Black Ball Freight Serv. v. Washington Utilities & Transp. Comm'n*, 74 Wash.2d 871, 447 P.2d 597 (1968), which did not specify what role the existence of adequate services played in determining whether to grant a certificate. The court pointed out that its statute was similar to the federal statute in effect at that time authorizing the Interstate Commerce Commission to issue motor carrier permits. 49 U.S.C.A. § 307 (1963).[8] The Washington court referred to several federal district court cases for this proposition: "The cases clearly state that adequacy of existing service is only one element to be considered in the determination of public convenience and necessity. There need not be a specific finding that existing service is inadequate before additional service can be authorized." 74 Wash.2d at 874–75, 447 P.2d at 599. (Citations omitted). There is no indication in the opinion that the court had adopted the doctrine of regulated competition. Its task was that of statutory interpretation, and there was no express language in the statute that required consideration of the adequacy of the existing service.

These are not the only cases that have considered the question of what effect the adequacy of existing service has under carrier regulatory statutes. In *State ex rel. Gulf Transp. Co. v. Public Serv. Comm'n*, 658 S.W.2d 448 (Mo.App.1983), the court found that its statutory language that the "Commission shall give reasonable consideration to the transportation service being furnished ... provided that the issuance of a certificate ... shall not prohibit the granting of such certificate to another carrier" should mean that the existing service was one of the factors to be considered. 658 S.W.2d at 451–52.

**8.** The Kansas Court of Appeals in *Chris Hunt Water Hauling Contractor, Inc. v. State Corp. Comm'n*, 10 Kan.App.2d 612, 706 P.2d 825 (1985), noted that the federal "Motor Carrier Act of 1980, Pub.L. No. 96–296, 94 Stat. 793 (codified in scattered sections of 49 U.S.C. §§ 10101–11902a [1982] )" had liberalized the regulatory law by providing that "the applicant need only show that he is 'fit, willing, and able' and that the service proposed 'will serve a useful public purpose.' 49 U.S.C. § 10922(b)(1) (1928)." 10

Kan.App.2d at 615, 706 P.2d at 828. The court also found that its legislature had accomplished the same result when in 1982 it amended the Motor Carrier Act to delete the phrase "the commission shall take into consideration other existing transportation facilities ... and in case it appears from the evidence that the service furnished ... is reasonably adequate, the commission shall not grant such certificate." 10 Kan.App.2d at 614, 706 P.2d at 827.

The Nebraska Supreme Court in *Spector Freight Sys., Inc. v. Herman Bros., Inc.,* 197 Neb. 835, 251 N.W.2d 376 (1977), found regulated competition to exist by virtue of this statutory language: "[T]he transaction proposed will be consistent with the public interest and does not unduly restrict competition[.]" 197 Neb. at 837, 251 N.W.2d at 378. The same result was reached by the Utah Supreme Court in *Spreader Specialists v. Public Serv. Comm'n of Utah,* 738 P.2d 1043 (Utah 1987), where it stressed the statute's repeated use of the term "competition" in the legislative policy statement with regard to regulating the motor carrier industry.

■ None of these cases involved statutes which had the specific statement found in W.Va.Code, 24A–2–5(a), that "in case [the PSC] finds from the evidence that the service furnished by existing transportation facilities is reasonably efficient and adequate, *the commission shall not grant such certificate.*" (Emphasis added). This language is clear and unambiguous. Not only does it require a consideration of the existing transportation service before issuing the certificate, but if the services are adequate, the certificate shall not be granted.

This language is inconsistent with the PSC's concept of regulated competition, which reduces the adequacy of existing service to a mere factor to be considered rather than a controlling determinant. The legislature commands that the certificate shall not issue if the existing services are reasonably efficient and adequate. This makes existing services a controlling factor.

■ Neither this Court nor the PSC is entitled to ignore the plain language of a legislative enactment. Our guiding principle is contained in Syllabus Point 2 of *State v. Elder,* 152 W.Va. 571, 165 S.E.2d 108 (1968):

"Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation."

*See, e.g., Marion County Bd. of Educ. v. Bonfantino,* 179 W.Va. 202, 366 S.E.2d 650 (1988); *Pullano v. City of Bluefield,* 176 W.Va. 198, 342 S.E.2d 164 (1986); *State ex rel. Underwood v. Silverstein,* 167 W.Va. 121, 278 S.E.2d 886 (1981); *Carper v. Kanawha Banking & Trust Co.,* 157 W.Va. 477, 207 S.E.2d 897 (1974). Furthermore, this statutory language contains the word "shall" and, as we stated in Syllabus Point 5 of *Rogers v. Hechler,* 176 W.Va. 713, 348 S.E.2d 299 (1986):

" 'The word "shall" in the absence of language in the statute showing a contrary intent on the part of the legislature, should be afforded a mandatory connotation.' Syl. pt. 2, *Terry v. Sencindiver,* 153 W.Va. 651, 171 S.E.2d 480 (1969)."

■ We, therefore, conclude that under our Common Carrier by Motor Vehicle Act, W.Va.Code, 24A–2–5, which provides that if "the service furnished by existing transportation facilities is reasonably efficient and adequate, the commission shall not grant such certificate," the PSC has a mandatory duty to consider evidence as to the sufficiency of existing service. If such existing service is reasonably efficient and adequate, the PSC should not issue a competing certificate. Because of this misapplication of the law, the PSC's decision must be reversed and this case remanded for further proceedings not inconsistent with the principles stated herein.

Reversed and remanded.