404 S.E.2d 528

**CAPITOL RADIOTELEPHONE COMPA-NY; American Mobilphone, Inc.; Mo-bilfone Service, Inc.; Paging, Inc.; Al-var V. Lauttamus, II, d/b/a Beep–Call; Personal Communications, Inc.; Mo-bile Telephone Service of Wheeling, Inc.; and Bobier Electronics, Inc.**

v.

**PUBLIC SERVICE COMMISSION OF WEST VIRGINIA and the Independent Paging Network.**

No. 19796.

Supreme Court of Appeals of West Virginia.

March 18, 1991.

**40**

Steven Hamula, Public Service Com'n, of West Virginia, Charleston, for Public Service Com'n.

Thomas N. Hanna, Charleston, for Independent Paging Network.

McHUGH, Justice:

In this case we review the July 20, 1990 final order of the Public Service Commission.[1]

Capitol Radiotelephone Company, American Mobilphone, Inc., Mobilfone Service, Inc., Paging, Inc., Alvar V. Lauttamus, II, d/b/a Beep–Call, Personal Communications, Inc., Mobile Telephone Service of Wheeling, Inc., and Bobier Electronics, Inc., are existing radio common carriers who are aggrieved by the Commission's final order.

The Public Service Commission of West Virginia (hereinafter the "Commission") and Independent Paging Network (hereinafter "IPN") urge affirmance of the Commission's final order in this case.

After reviewing all matters of record and the arguments of the parties, we are of the opinion that the final order of the Commission should be affirmed.

T.D. Kauffelt, Kauffelt & Kauffelt, Charleston, for Capitol Radiotelephone Co., American Mobilphone, Inc., Mobilfone Service, Inc., Paging, Inc., Alvar V. Lauttamus, Mobile Telephone Service of Wheeling, Inc. and Bobier Electronics, Inc.

1. *W.Va.Code,* 24–5–1 [1979] permits review of final orders of the Public Service Commission by this Court.

2. *W.Va.Code,* 24–2–11 [1983] provides, in part:
 (a) No public utility, person or corporation shall begin the construction of any plant, equipment, property or facility for furnishing to the public any of the services enumerated in section one, article two of this chapter, nor apply for, nor obtain any franchise, license or permit from any municipality or other governmental agency, except ordinary extensions of existing systems in the usual course of business, *unless and until it shall obtain from*

**I**

On October 23, 1989, IPN, a division of Independent Cellular Network, Inc., filed an application for a "certificate of public convenience and necessity" pursuant to the provisions of *W.Va.Code,* 24–2–11 [1983].[2] It is the intention of IPN, a radio common

*the public service commission a certificate of public convenience and necessity* requiring such construction, franchise, license or permit. Upon the filing of any application for such certificate, and after hearing, the commission may, in its discretion, issue or refuse to issue, or issue in part and refuse in part, such certificate of convenience and necessity: Provided, That the commission, after it gives proper notice and if no protest is received within thirty days after the notice is given, may waive formal hearing on the application. (emphasis supplied)

carrier, to operate a telephone paging service throughout West Virginia.[3]

Following notice and the filing of petitions to intervene by the existing radio common carriers, a hearing was held on February 22, 1990 before an administrative law judge.

On June 29, 1990, the administrative law judge issued a recommended decision to deny IPN the certificate of public convenience and necessity.

On July 20, 1990, the Commission issued a final decision in this matter. In its final decision, the Commission adopted all of the administrative law judge's findings of fact, but only some of the administrative law judge's conclusions of law, apparently rejecting others. In so rejecting some of the conclusions of law, the Commission reversed the administrative law judge's recommended decision, thus, granting IPN a certificate of public convenience and necessity.

A request for review by this Court ensued.

## II

The existing radio common carriers currently provide a fairly sophisticated level of paging services. They contend that the Commission's decision to grant IPN a certificate of public convenience and necessity establishes an unfair competitive situation which will ultimately decrease the quality of paging service in this state.

Particularly, the existing carriers point to the testimony presented at the February 22, 1990 hearing, asserting that such testimony clearly demonstrates that the paging service offered by IPN is primitive.

The testimony presented at the February 22, 1990 hearing included that of Frances J. Heaton, Director of Operations for Independent Cellular Network, the parent company of IPN. Mr. Heaton testified that

Independent Cellular Network is currently franchised to provide cellular telephone service in various metropolitan areas, including several counties in West Virginia. In order to provide cellular telephone service to these areas, numerous antenna sites are operated by Independent Cellular Network. The paging service which IPN desires to provide can utilize the antenna sites in its operations with no substantial modification.[4]

IPN would eventually provide paging service throughout forty-four counties in West Virginia. However, this paging service, described as "wide-area paging" or "statewide paging," is merely a basic service, which features "tone-only, one-way" paging. With this type of paging, the user carries a paging device which sounds only a tone when the user is receiving a call. The user must then, through the use of a regular telephone, call a central location to learn the details of the page.

The existing carriers, on the other hand, as stated previously, provide a fairly sophisticated level of paging services. Their services are described as "state-of-the-art," and include an alpha-numeric display feature, which displays the name and/or telephone number of the caller. Similarly, the paging services provided by the existing carriers include voice paging, whereby the user can hear the voice of either the caller or the person relaying the message, without the inconvenience of using a telephone to get a message. The existing carriers also provide tone paging, which allows the user to audibly distinguish between various incoming tones so as to know who is calling or what the message may be.

The *entire* geographic area proposed to be served by IPN is larger than any *one* area already served by the existing carriers, but it is no larger than the *collective* area served by the existing carriers.[5]

---

**3.** The paging service offered by IPN, as it relates to the legal issues raised herein, will be discussed in more detail later in this opinion.

**4.** Mr. Heaton testified that each antenna site could be modified to accommodate paging services at approximately $18,000 per site.

**5.** A "referral service" has been established by the existing carriers by which their customers can receive messages in each other's geographic areas at an additional charge. Some of the witnesses for the existing carriers admitted that there are gaps between existing service areas.

The existing carriers are concerned that because IPN's customers would be forced to use telephones to receive messages, then IPN stands to unfairly gain business through an increased use of cellular telephones, which would be provided by Independent Cellular Network.[6]

IPN also presented the testimony of six "public" witnesses in support of its application. Some of these witnesses admittedly did not know of the existing carriers' services, but they testified that they could utilize the services proposed to be provided by IPN. The primary concerns of these witnesses are as follows: (1) the limited geographical range of the existing carriers is inconvenient because multiple carriers must be utilized to obtain increased coverage; (2) in some cases, multiple pagers are presently needed per vehicle to meet communication needs; and (3) the availability of wide-area paging would be attractive to customers.

Because IPN's main source of revenue is from cellular telephone service provided by its parent company, Independent Cellular Network, the existing carriers draw the conclusion that IPN will never have incentive to upgrade its service, and, consequently, the existing carriers will be forced to compete strictly for the basic paging service.

The Commission, on the other hand, maintains that because the services offered by the existing carriers have more convenient features than the basic service offered by IPN, then: (1) competition is *fostered* in the radio common carrier industry because of the wider choice of service options; and (2) the value and desirability of the services offered by the existing carriers are more enhanced. Furthermore, the Commission asserts that the fact that IPN is only offering basic paging service does not necessarily lead to the conclusion that IPN will never have incentive to upgrade its available services.

Obviously, the positions of the parties on this assignment of error are merely the result of conclusions drawn from the *level* of service proposed to be provided by IPN.

■ It has long been recognized that this Court will defer to the judgment of the Commission where such judgment is based upon facts which are not contrary to the evidence presented.

'The principle is well established by the decisions of this Court that an order of the public service commission based upon its finding of facts will not be disturbed unless such finding is contrary to the evidence, or is without evidence to support it, or is arbitrary, or results from a misapplication of legal principles.' *United ed Fuel Gas Company v. The Public Service Commission*, 143 W.Va. 33 [,45, 99 S.E.2d 1, 8 (1957)].

Syl. pt. 5, *Boggs v. Public Service Commission*, 154 W.Va. 146, 174 S.E.2d 331 (1970). *Accord*, syl., *City of Benwood v. Public Service Commission*, 165 W.Va. 700, 271 S.E.2d 342 (1980).[7]

■ Clearly, in this case, the final order of the Commission is based upon the evidence presented at the February 22, 1990 hearing. The parties' contentions before this Court, as previously noted, are conclusions drawn with respect to the *possible*

---

**6.** In support of this contention, the existing carriers complain that Independent Cellular Network enjoys "protected revenues," referring to federal regulations which allow only two cellular telephone providers to operate within a "Metropolitan Statistical Area." *See generally* 47 *C.F.R.* §§ 22.0–22.930 (1990).

IPN, in its petition for a certificate of public convenience and necessity, also sought the right to modify its rates upon notice of only one day. In its final decision, the Commission denied this request, but modified the time frame for such notice to fourteen days, so as to provide the Commission sufficient time to address problems of those affected by proposed rate changes.

The existing carriers maintain that IPN's "protected revenues," combined with its right to modify rates upon fourteen days notice, will create an unfair situation allowing IPN to reduce the existing carriers' customer base. We do not agree with this contention for the reasons set forth in this opinion.

**7.** We discussed at some length the standard of review by this Court in the context of a utility rate increase in *Monongahela Power Co. v. Public Service Comm.*, 166 W.Va. 423, 425–29, 276 S.E.2d 179, 181–83 (1981).

effects on the radio common carrier industry in the event IPN is granted a certificate of public convenience and necessity. Because the Commission's findings are based upon the evidence, we will not substitute our judgment for that of the Commission's.

Accordingly, we reject the contention of the existing carriers in this regard.

### III

We now turn to the existing carriers' second and final contention, specifically, whether the Commission committed error by concluding that IPN provided sufficient public testimony to support its application for a certificate of public convenience and necessity.

In so contending, the existing carriers urge this Court to invalidate application of the "regulated competition theory" to the radio common carrier industry. Accordingly, a discussion of the regulated competition theory is necessary.

 Under the regulated competition theory, the Commission, in reviewing an application for certification, determines only whether the applicant has made a *prima facie* case. Particularly, the applicant seeking certification " 'need not demonstrate that the existing service is inadequate, but must *only* show that the public interest would be served by certification.' " *Stowers & Sons Trucking Co. v. Public Service Commission,* 182 W.Va. 374, 378, 387 S.E.2d 841, 845 (1989) (quoting final

order of Commission) (emphasis supplied). In such case, those challenging the grant of certification bear the burden of showing that such a grant would endanger or impair the operations of existing carriers to an extent contrary to public interest.

In *Stowers,* the Commission, applying the theory of regulated competition, granted a certificate of convenience and necessity to a trucking company. This Court, however, reversed the Commission's decision, pointing out that *W.Va.Code,* 24A–2–5 [1980] was ignored by the Commission. That section requires the Commission to not only determine that the proposed service is required by public convenience and necessity, but the Commission must *also* consider existing transportation facilities. Under this provision, if the Commission "finds from the evidence that the service furnished by existing transportation facilities is reasonably efficient and adequate, the commission *shall not* grant such certificate." *W.Va.Code,* 24A–2–5(a) [1980] (emphasis supplied).[8] *See also Weirton Ice & Coal Supply Co. v. Public Service Commission,* 161 W.Va. 141, 147, 240 S.E.2d 686, 690 (1977); syl. pt. 2, *Charleston Transit Co. v. Public Service Commission,* 142 W.Va. 750, 98 S.E.2d 437 (1957); syl. pt. 2, *McKee v. Public Service Commission,* 124 W.Va. 10, 18 S.E.2d 577 (1942); 13 C.J.S. *Carriers* § 359 (1990).

In this case, the Commission asserts that the holding of *Stowers* is not applicable to

---

**8.** In more detail, the pertinent provisions of *W.Va.Code,* 24A–2–5 [1980] are as follows:

(a) *Required; application; hearing; granting.*—It shall be unlawful for any common carrier by motor vehicle to operate within this state without first having obtained from the commission a certificate of convenience and necessity.... After the hearing or waiver by the commission of the hearing, if the commission finds from the evidence that the public convenience and necessity require the proposed service or any part thereof, it shall issue the certificate as prayed for, or issue it for the partial exercise only of the privilege sought, and may attach to the exercise of the right granted by such certificate such terms and conditions as in its judgment the public convenience and necessity may require, and if the commission shall be of the opinion that the service rendered by any common carrier

holding a certificate of convenience and necessity over any route or routes in this state is in any respect inadequate or insufficient to meet the public needs, such certificate holder shall be given reasonable time and opportunity to remedy such inadequacy or insufficiency before any certificate shall be granted to an applicant proposing to operate over such route or routes as a common carrier. *Before granting a certificate to a common carrier by motor vehicle the commission shall take into consideration existing transportation facilities in the territory for which a certificate is sought, and in case it finds from the evidence that the service furnished by existing transportation facilities is reasonably efficient and adequate, the commission shall not grant such certificate.*
(emphasis supplied)

the facts presented in this case. We agree.[9]

■ In *Stowers*, the certificate of convenience and necessity was sought under article 24A of the *West Virginia Code*, which applies to *motor* carriers. The certificate in *this* case, on the other hand, is sought pursuant to the provisions of article 24, specifically, *W.Va.Code*, 24–2–11 [1983], which does not require the Commission to consider existing services. Rather, *W.Va. Code*, 24–2–11 [1983] merely requires the Commission to determine whether a public convenience and necessity exist before granting a certificate. As set forth by subsection (a) therein: "The commission shall prescribe such rules and regulations as it may deem proper for the enforcement of the provisions of this section; and, in establishing that public convenience and necessity do exist, the burden of proof shall be upon the applicant." We spoke to the absence of such a requirement in *Stowers:* "It would appear proper for the [Public Service Commission] to allocate the burden of proof in the absence of any express statutory language." 182 W.Va. at 379 n. 5, 387 S.E.2d at 846 n. 5.

Moreover, the Commission points out that it departed from the consideration of the effect on existing facilities in its opinion in *Portapage, Inc.*, No. 79–261–C–CN (Dec. 30, 1980), thus, adopting the theory of regulated competition to be applied to radio

common carrier cases as permitted by *W.Va.Code*, 24–2–11. Furthermore, in its opinion in *Mobilphone Service, Inc.*, No. 87–540–C–CN (June 29, 1988), the Commission concluded that paging services are competitive, and, therefore, the regulated competition theory is applicable to cases involving such services.

Because there is no such statutory mandate applying to cases involving *radio* common carriers, the Commission is not required to consider the effect of granting a certificate of public convenience and necessity on existing radio common carriers.[10]

Accordingly, in a case where a radio common carrier seeks a certificate of public convenience and necessity pursuant to the provisions of *W.Va.Code*, 24–2–11 [1983], the Public Service Commission must place the burden of proof upon the applicant in establishing that public convenience and necessity do exist. However, the Public Service Commission is not required to consider the effect of granting such certificate on existing radio common carriers. When such public convenience and necessity is properly shown, it is not error for the Public Service Commission to grant a certificate of public convenience and necessity.

■ As pointed out in section II of this opinion, witnesses for IPN testified to the attractiveness of wide-area paging services as well as the impractical nature of the limitations imposed by the services provid-

**9.** The administrative law judge *and* the Commission concluded that the holding of *Stowers* does not apply to this case.

**10.** The administrative law judge, in recommending that the certificate in this case be denied, acknowledged that the specific statutory burdens are not set forth by *W.Va.Code*, 24–2–11 [1983]. However, the administrative law judge went on to rely upon the legislative purpose of the Public Service Commission, as set forth in *W.Va.Code*, 24–1–1 [1986], which provides, in part:

(a) It is the purpose and policy of the Legislature in enacting this chapter to confer upon the public service commission of this state the authority and duty to enforce and regulate the practices, services and rates of public utilities in order to:

(1) Ensure fair and prompt regulation of public utilities in the interest of the using and consuming public;

(2) Provide the availability of adequate, economical and reliable utility services throughout the state;

(3) Encourage the well-planned development of utility resources in a manner consistent with state needs and in ways consistent with the productive use of the state's energy resources, such as coal;

(4) Ensure that rates and charges for utility services are just, reasonable, applied without unjust discrimination or preference, applied in a manner consistent with the purposes and policies set forth in article two-a of this chapter, and based primarily on the costs of providing these services[.]

We do not agree with the administrative law judge's reliance upon this statutory provision in this regard. Application of the theory of regulated competition does not run afoul of *W.Va. Code*, 24–1–1 [1986].

ed by existing carriers. Clearly, this was sufficient for the Commission to conclude that IPN's proposed service will provide a useful public purpose which is responsive to a public need.

Therefore, there was no error committed on the part of the Commission in this regard.

## IV

Consistent with the foregoing, the final order of the Commission in this case is affirmed.

Affirmed.

BROTHERTON, Justice, dissenting:

I find that I must dissent to the majority opinion in this case. Under W.Va.Code § 24–2–11 (1983), the majority finds that the Public Service Commission is required to determine only whether public convenience and necessity exists before granting a certificate to the requesting carrier. Thus, in this case, there is no need to consider existing services as is required by W.Va.Code § 24A–2–5(a) (1980). Under the facts presented in this case, however, I believe the majority's opinion is based upon an erroneously narrow reading of the statute.

This Court has held " '[t]hat which is necessarily implied in a statute, or must be included in it in order to make the terms actually used have effect, according to their nature and ordinary meaning, is as much a part of it as if it had been declared in express terms.' Syllabus point 14, *State v. Harden*, 62 W.Va. 313, 58 S.E. 715 (1907)." Syllabus point 4, *Smith v. State Workmen's Compensation Commissioner*, 159 W.Va. 108, 219 S.E.2d 361 (1975). In this case, a simple analysis of the language of W.Va.Code § 24–2–11 makes it clear that in order to determine whether a necessity exists, current services must be analyzed. How else can necessity be determined? In fact, the majority's conclusion that the Commission is not required to consider the effect of granting a certificate of public convenience and necessity on the existing carriers was reached without enough evidence to show even minimal

public convenience, let alone necessity. By dissecting the heart from the requirement of "public convenience and necessity," this Court weakens the purpose of the Public Service Commission to serve the public as required by statute.

Thus, for the above stated reasons, I dissent.