## No. 26668

**Wells Fargo Armored Service Corporation v. Public Utilities Commission of the State of Colorado, and Purolator Security, Inc.**

(545 P.2d 707)

Decided January 26, 1976.

Rothgerber, Appel & Powers, James M. Lyons, for petitioner-appellant.

J. D. MacFarlane, Attorney General, Jean E. Dubofsky, Deputy, Eugene C. Cavaliere, Assistant, James K. Tarpey, Assistant, for respondent-appellee The Public Utilities Commission.

Jones, Meiklejohn, Kehl & Lyons, Edward T. Lyons, Jr., for respondent-appellee Purolator Security, Inc.

*En Banc.*

MR. JUSTICE GROVES delivered the opinion of the Court.

We affirm the district court, which had upheld the Public Utilities Commission's grant of a certificate of convenience and necessity as a common carrier to Purolator Security, Inc. (called the Appellant) over the objection of Wells Fargo Armored Service Corporation (called Wells Fargo).

The Applicant sought — and was granted — authority to transport over irregular routes "(1) between points in Adams, Arapahoe, Boulder, Denver, Douglas and Jefferson Counties and (2) between points in the Counties named in (1) on the one hand, and, on the other hand, all points within the State of Colorado." The articles to be transported are: money, coin, currency, gold, silver, bullion, jewelry, checks, bank drafts, negotiable instruments, business papers, securities, other valuable papers, and other articles of unusual value. Wells Fargo had authority to transport substantially the same articles between all points located within the state of Colorado.

The proceedings before the Commission involve a record of over 1000 pages, slightly over 800 of which are the transcript of testimony. One of the members of the Commission conducted the hearing. He tendered a recommended decision which was adopted by a 2-1 vote of the Commission.

The following is a description of the findings and conclusions in the Commission decision:

With the exception of "isolated"[1] areas, Wells Fargo has a monopoly in Colorado. This does not "fit a pattern of service needed by the public." There is a great public need for competition in this field of service. (This is the main thrust of the findings, and there are many detailed findings supportive of the general finding just mentioned.)
* * *

". . . [T]he competitive service authorized in the following order is comparable and will be reasonable, not destructive to Wells Fargo, and will be in the public interest." Unless the requested authority is granted the doctrine of regulated competition will not prevail. "[T]he Applicant is fit, able and willing, financially and otherwise, to render the service."
* * *

"The present and future public convenience and necessity require and will require the granting of the authority as hereinafter set forth, and such granting will be in the public interest."

---

[1] The "isolated" areas are the metropolitan area of Denver and Boulder County.

The dissenting commissioner predicated his dissent upon his expression that there were no basic findings of fact and it "is completely impossible to determine upon which evidence in the record or defined legal principles [the decision] rests." He further stated that due process of law requires that the Wells Fargo exceptions should be granted and the application denied.

Four arguments have been presented by Wells Fargo, as follows:

1. The findings are inadequate.

2. Guidelines have not been established for application of the doctrine of regulated competition, and the doctrine's application here is not explained.

3. The evidence does not support the decision.

4. "The applicant failed to meet its burden of proof concerning economic feasibility and the record discloses serious questions relating to the public interest with which the Commission did not deal."

## I.

As to the contention that the findings are insufficient, admittedly findings must be made. This is a statutory mandate. Section 40-6-109(2), C.R.S. 1973. After rather brief discussion in the briefs of the adequacy of the findings, the arguments switch to whether the findings are supported by the evidence. That has been designated as another issue and, therefore, will be discussed later. The essential findings are that there is a need for this additional service and that economic feasibility will not be lost by the granting of the application. Again, Wells Fargo sets forth the matter of economic feasibility as a separate issue, and we will deal with this matter later on in our opinion. This leaves only the issue of need for the service for discussion here. In that connection, the findings of the Commission state in almost every conceivable way that there is a need.

## II.

The Commission decision turns on the relatively new doctrine of regulated competition under Section 40-10-105(2), C.R.S. 1973. This statute changed the doctrine of "regulated monopoly" into the doctrine of "regulated competition." Passing references were made to the statute in *Northeastern Motor Freight v. PUC*, 178 Colo. 433, 498 P.2d 923 (1972) and *Rocky Mountain Airways v. PUC*, 181 Colo. 170, 509 P.2d 804 (1973). The first direct interpretation of the statutory doctrine of regulated competition was in our trilogy of opinions announced on July 29, 1974: *Miller Bros., Inc. v. PUC*, 185 Colo. 414, 525 P.2d 443; *Red Ball Motor Freight v. PUC*, 185 Colo. 438, 525 P.2d 439; *D&G Sanitation, Inc. v. PUC*, 185 Colo. 386, 525 P.2d 455. The bellwether of these opinions was *Miller Bros., Inc.* Attention is directed to Part VI of *Miller Bros., Inc.* which contains the findings of the Commission, and which we ruled were valid and were tantamount to guidelines for the doctrine of regulated competition.

■ The second issue presented by Wells Fargo is that guidelines have not been established for the doctrine of regulated competition, and the doctrine's application has not been explained. Here, we have more guidelines than we had before us in *Miller Bros., Inc.*, because we have those there ruled to be sufficient and valid, plus the findings of the Commission in the instant case. It follows that we should, and we therefore do, rule that the guidelines thus established are sufficient and valid.

## III.

Earlier in the opinion it was mentioned that, except for the metropolitan area of Denver and Boulder County, there is a great need for competition in this particular type of service. We then mentioned that this was the main thrust of the finding and that that general finding was supported by many detailed findings. Some of the supportive findings are to the effect that the services offered by Wells Fargo are so complex that, when it is the only carrier available, a customer is in an unfavorable position to evaluate whether charges may be exorbitant or whether service is sufficient; that members of the public desire another carrier comparable to Wells Fargo; that member of the public will not be captive and will be in a more favorable position to bargain for better rates and better services if there is another carrier in the field; that, because of the present situation, there is inevitably a tendency to decrease the quality of service and to increase rates, whereas some alternative comparable competition can only tend to improve the quality of service and decrease rates; that in instances when there has been limited competition, the quality of services and rates have improved; that by its nature the subject transportation service· requires special equipment, specially skilled personnel and special methods of operation, the result of which is that such operations are too costly for individual customers to provide their own service; and that, while the service of Wells Fargo is reasonably adequate, with comparable reasonable competition it should improve.

■ The evidence was conflicting. We simply rule that there was sufficient evidence to support these findings.

## IV.

Wells Fargo's last point, which really amounts to two issues, is that the applicant failed to meet its burden of proof concerning economic feasibility, and that the record discloses serious questions relating to the public interest with which the Commission did not deal.

Attention should be drawn to the fact that neither the applicant nor Wells Fargo are strangers to this business, and that neither are small operators. The applicant engages in armored car service in Connecticut, New York, New Jersey, Pennsylvania, Maryland, Louisiana, Texas, Arizona, Illinois, Indiana, California, Iowa and the District of Columbia. Similar operations are performed by companies affiliated with it in Oklahoma and Florida, as well as portions of Colorado. Wells Fargo operates armored car

services not only nationally, but internationally.

■ There was good and competent evidence to support the finding that "the Applicant is fit, able and willing, financially and otherwise, to render the service," as well as to support the implied finding that the service will be economically feasible so far as applicant is concerned.

■ It is true that Wells Fargo representatives testified that, if the certificate were issued to applicant, Wells Fargo's operations would not be economically feasible. However, cross-examination developed a maze of testimony as to the percentage of overhead costs of the Colorado Wells Fargo operations constituting a substantial part of the overhead costs of Wells Fargo's nationwide operation. Cross-examination cast considerable question upon the opinions of unfeasibility tendered by Wells Fargo representatives. This leads us to the conclusion that we cannot overturn the finding that the action by the Commission will not be destructive to Wells Fargo.

■ In a limited area, Purolator Courier Corporation, the applicant's parent company, and Colorado Cartage Company, the applicant's sister corporation, hold authority to perform simultaneous carriage for identical commodities. Wells Fargo states in its brief:

"Such triplicating authorities and tri-operating capacities multiply the opportunities for discriminations, advances and rebates and other anti-competitive practices contrary to the public interest of the shippers of the State of Colorado who use the service and are devastating to those carriers, like Wells Fargo, which must attempt to compete with this elusive family of carriers. Again, nowhere does the Commission address itself to this important issue properly raised by Wells Fargo."

In the dense urban area involved, the record does not support a reversal of the Commission on the question of "triplicating authority." Further, the Commission did pass on this point. Wells Fargo moved for dismissal of the proceeding on this very ground and, in its decision, the Commission denied the motion.

Judgment affirmed.