POLLARD CONTRACTING CO., INC.,
Plaintiff-Appellant,

v.

The PUBLIC UTILITIES COMMISSION OF the STATE OF COLORADO and Edythe S. Miller, Daniel E. Muse and L. Duane Woodard as the members thereof; and White & Sons Construction, Inc., Defendants-Appellees.

No. 80SA566.

Supreme Court of Colorado,
En Banc.

April 12, 1982.

---

Stockton & Lewis, James A. Beckwith, Denver, for plaintiff-appellant.

Jones, Meiklejohn, Kehl & Lyons, Thomas J. Burke, Jr., Denver, J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Eugene C. Cavaliere, Asst. Atty. Gen., Denver, for defendants-appellees.

HODGES, Chief Justice.

The appellee, Public Utilities Commission (PUC), granted White and Sons Construction, Inc.'s (White) application for a permit

to operate as a contract carrier by motor vehicle for the transportation of passengers. Appellant Pollard Contracting Co., Inc. (Pollard), a common carrier, opposed the application and sought judicial review in the trial court to invalidate the granting of the contract carrier permit. The trial court affirmed the PUC decision and Pollard appeals that judgment. We affirm.

Occidental Oil Shale, Inc. (Occidental), operates a shale oil production plant located approximately twenty miles northwest of Rio Blanco, Colorado. After consultation with community officials, Occidental developed a transportation plan to provide free bus transportation to its plant for its employees, most of whom lived in Rifle and Meeker, Colorado. The purpose of this transportation service was to minimize the environmental, safety and social impact which would otherwise be created if these employees had to provide for their own transportation.

In furtherance of the proposed transportation plan, Occidental acquired several specially equipped buses which it believed would provide the necessary safety and comfort features to attract employee ridership. Additionally, in March 1978, Occidental entered into an agreement with the White firm whereby it would provide drivers for the buses and would maintain and service them at its facilities. Under the terms of the agreement, the buses would be operated and serviced according to schedules and guidelines established by Occidental. This transportation service began in March, 1978.

In September 1978, Occidental requested bids from contract and common carriers for proposals to provide daily bus transportation for Occidental employees, which was then being provided by White. While several bids were submitted, the only two which are pertinent were provided by White and appellant Pollard. The highest bid was submitted by Pollard which exceeded the lowest bid by approximately four hundred percent. The lowest bid was turned in by White.

Occidental then entered into a second agreement with White. The terms of this second agreement were substantially similar to the first agreement. It also provided that Occidental would continue to own the buses with White providing qualified drivers, fueling, cleaning, and maintenance facilities on a cost-plus basis. Additionally, Occidental continued to establish the transportation and maintenance schedules along with specifying the required location of repair, fuel and maintenance facilities.

In March 1979, White was informed that continued service by it under the agreement reached with Occidental required PUC authority. It had previously been indicated to the White firm by the PUC that no such authority was required. White filed with the PUC Application No. 31691–PP for a Class B contract carrier permit.[1]

At the June 1979 hearing on White's application, appellant Pollard appeared in opposition. Pollard is a Colorado common carrier holding Certificate PUC 1610 & I. Its certificate was issued in 1976 and included authority to transport on schedule passengers and their baggage, parcels and packages between Rifle, Rio Blanco, Meeker, Rangely and Dinosaur, Colorado, on the one hand, and oil shale locations in Rio Blanco County, State of Colorado, on the other hand. Pursuant to this authority, Pollard purchased a single bus for the transportation of passengers. However, at no time prior to the June 1979 hearing had Pollard provided any common carrier service for passengers between the points described above.

After hearing on White's application, the PUC hearing examiner found that White's transportation service was within the definition of a contract carrier. In accordance with *Denver Cleanup Service v. P. U. C.*, 192 Colo. 537, 561 P.2d 1252 (1977), the examiner then determined that the proper test for granting the contract carrier per-

---

1. Class B contract carriers are defined in section 40–11–101(9)(b) as "... all contract carriers by motor vehicle which do not operate over substantially regular or established routes or between substantially fixed termini."

mit was whether Occidental had a distinct need for a different or more specialized service than that which was currently being provided or which could be provided by Pollard under its common carrier authority. The hearing examiner recommended that the PUC grant a Class "A" contract carrier's permit to White.[2] This recommendation was based on the following relevant conclusions and findings:

"2. Applicant's proposed service is distinctly different to that of authorized common carriers.

4. Applicant has provided to it adequate equipment to conduct the operations sought in this application.

5. The operations of authorized common carriers will not be impaired."

Appellant Pollard filed several exceptions to the hearing examiner's report. The PUC, after adopting the conclusions and findings of the hearing examiner in its Decision No. C80–702, made the following relevant findings of fact:

"9. [T]he Commission is persuaded that the service as proposed by White for Oxy is distinctly superior to that which the protestant Pollard proposes to provide.... Pollard as above described has no repair or maintenance facilities and no drivers. Pollard has also failed to show that the proposed operation will impair Pollard's service in that Pollard has never had or provided any such service pursuant to PUC No. 1610 & I. White has clearly established that it is fit and able to perform the proposed service.

11. The contention of Pollard that the sole motivating factor in causing the issuance of the instant authority was rate considerations, is not correct.... The commission finds that price, quality of equipment,

location of White and Pollard, repair and maintenance facilities, and personnel along with other intangible concerns were all part of Oxy's reason for supporting this application and are relevant factors in this and the Examiner's recommended grant of authority.

13. Pollard also contends that the principles of regulated monopoly apply herein and were not considered by the Examiner. The Commission disagrees with this contention. The principles of regulated monopoly apply to common carriers of persons, but not to private or contract carriers."

In its decision, the PUC denied Pollard's exceptions and adopted the recommendation to grant a Class "A" permit to White.

Appellant Pollard initiated an action in the trial court to review and reverse the PUC decision. The trial court affirmed the PUC's Decision No. C80–702 and appellant Pollard, pursuant to section 40–6–115(5), C.R.S.1973, appeals to this court and urges reversal of the trial court's judgment.

I.

Appellant Pollard maintains that the trial court erred in affirming the PUC's grant of a contract carrier permit to White because the PUC applied an improper standard as a basis for granting this permit. It is the appellant's contention that inasmuch as both Articles 10 and 11 of Title 40, C.R.S. 1973, apply to contract carriers of persons, the doctrine of regulated monopoly sets the standard to be applied. In support of this contention, Pollard argues that White failed to demonstrate to the PUC that the existing service provided by Pollard as a common carrier was substantially inadequate to meet the needs of Occidental, as required by the regulated monopoly doctrine. *See Ephraim Freightways, Inc. v. Public Utili-*

2. Class A contract carriers are defined in section 40–11–101(9)(a) as "... all contract carriers by motor vehicle operating over substantially regular or established routes or between substantially fixed termini or to a fixed terminus."

*ties Commission,* 151 Colo. 596, 380 P.2d 228 (1963).

It is clear, and there is no dispute between the parties on this, that the application sought by White falls squarely within the definition of a "contract carrier by motor vehicle" as set forth in section 40–11–101(3), C.R.S.1973. In *Mobile Pre-Mix Transit v. Public Utilities Commission,* Colo., 618 P.2d 663 (1980), this court held that the statutes applicable to the regulation of contract carriers are contained solely in Article 11 of Title 40 of the Revised Statutes, section 40–11–101 *et seq.,* C.R.S. 1973. Additionally, section 40–11–103(1), C.R.S.1973, makes it evident that Article 10 of Title 40 does not apply to contract carriers. This section provides in relevant part:

"It is declared that the business of contract carriers by motor vehicle is affected with a public interest and that the safety and welfare of the public traveling upon such highways, the preservation and maintenance of such highways, and the proper regulation of motor vehicle common carriers using such highways *require the regulation of contract carriers by motor vehicle to the extent provided in this article....*" (Emphasis added).

■ The proper standard of review to be applied by the PUC in ruling on an application for a contract carrier permit to transport persons or property by motor vehicle is contained in section 40–11–103(2), C.R.S. 1973. *See McKay v. Public Utilities Commission,* 104 Colo. 402, 91 P.2d 965 (1939). That section provides:

(2) No permit nor any extension or enlargement of an existing permit shall be granted by the commission if in its judgment the proposed operation *will impair the efficient public service of any authorized common carrier than adequately serving the same territory over the same general highway route.* (Emphasis added).

From the foregoing, it is clear that the General Assembly did not intend that the

3. The remaining guidelines, A, B and D are intertwined with guideline C and are in accord with this court's recommendation provided in

doctrine of regulated monopoly be applied by the PUC when ruling on an application for a motor vehicle contract carrier permit. Rather, the determination to be made in considering an application for a contract carrier permit is whether the existing common carrier service will be impaired if the application is granted.

■ We find that the PUC applied the correct standard in granting the contract carrier permit in this case. Section 40–2–108, C.R.S.1973, grants authority to the PUC to promulgate rules and regulations, consistent with the statutes, for governing contract carriers within the state. Pursuant to this authority, the PUC has adopted guidelines governing contract carrier permit applications. Specifically, guideline "C" states among other things that:

"The proper procedure, therefor, is for the applicant first to demonstrate that the undertaking it proposes is specialized and tailored to a shipper's distinct or superior transportation need. The protestants then may present evidence to show they have the ability as well as the willingness to meet that specialized or distinctively different need. If that is done then the burden shifts to the applicant to demonstrate that it is better equipped to meet the distinct or superior needs of the shipper than the protestants. The protestant must establish that the proposed operation of the contract carrier will impair the efficient public service of common carriers serving in the same area." [3]

These guidelines are in accord with the statutory standard set forth in section 40–11–103(2), *supra,* and were properly utilized by the PUC in this case.

■ If there is competent evidence in the record to support the findings of the PUC, this court will not substitute its judgment for that of the PUC. *Colorado Municipal League v. Public Utilities Commission,* 197 Colo. 106, 591 P.2d 577 (1979); *B. D. C. Corporation of Colorado v. Public Utilities Commission,* 167 Colo. 472, 448 P.2d 615 (1968).

*Denver Clean-Up Service, Inc. v. Public Utilities Commission, supra.*

■ Without repeating the PUC's findings as set forth previously, we find that at the PUC hearing on White's application for a contract carrier permit there was ample evidence to support the conclusion that the grant of the permit would not impair the efficient public service then being provided by the appellant Pollard.

In short, there was evidence before the PUC that there was no existing common carrier service for the transportation of people being provided by Pollard. Therefore, there could be no impairment by the issuance of a contract carrier permit to White.

## II.

■ We find no merit to the appellant's claim that the PUC, in approving White's application, violated its statutory duty to establish minimum rates for contract carriers as required by section 40–3–102, C.R.S. 1973. Specifically, Pollard asserts that the PUC impliedly sanctioned the rates established by White for its transportation service by failing to rule on the validity of those rates at the time of granting the contract carrier permit. This, it is claimed, resulted in an improper delegation by the PUC of its ratemaking authority and renders void the PUC grant of the contract carrier permit to White.

This argument fails to recognize the nature of the proceedings now under review. There was no ratemaking proceeding before the PUC. The PUC was under no statutory duty to rule upon the rates established by White at the time of ruling on the contract carrier application.

White's application was filed pursuant to section 40–11–103(1), C.R.S.1973, which states in pertinent part:

(1) It is unlawful for any contract carrier by motor vehicle to engage in or transact the business of transporting passengers . . . over the public highways of the state

of Colorado in intrastate commerce *without first obtaining a permit therefor from the public utilities commission of the state of Colorado.* (Emphasis added).

As the emphasized portion of this section establishes, the statutory prerequisite for engaging in contract carriage in this state is the granting of a permit by the PUC. It is not until the permit has been issued that the contract carrier is required to file its rates with the PUC. Thereafter, the filed rates are subject to hearing and suspension at the discretion of the commission. Section 40–11–105(2), C.R.S.1973. *Public Utilities Commission v. District Court,* 186 Colo. 278, 527 P.2d 233.

■ Similarly, we disagree with Pollard's argument that the trial court abrogated its statutory duty to conduct an independent review of the legal principles and factual findings made by the PUC in approving White's application. Apparently, this argument is premised on the fact that the trial court did not make specific findings on each issue raised by the appellant. Section 40–6–115(2), C.R.S.1973, provides that where, as here, a PUC decision is challenged on constitutional grounds,[4] the decision is not final and that "the district court shall exercise an independent judgment on the law and the facts" material to the PUC's decision. We find that the trial court has complied with this statutory requirement.

In *Public Utilities Commission v. Northwest Water Corp.,* 168 Colo. 154, 451 P.2d 266 (1969), this court discussed at length the scope of judicial review required by section 40–6–115(2), C.R.S.1973. We stated therein:

"This section contemplates there be in the Commission's files some evidence to support a decision and order which the courts can review and which will enable the court intelligently to determine whether the Commission has exceeded its jurisdiction, abused its discretion, and whether

---

4. In its petition for Writ of Certiorari to the district court the appellant challenged the constitutionality of the PUC's decision claiming that the Commission, in granting Application No. 31691--PP, abrogated its ratemaking authority as provided by Article XXV of the Colorado Constitution. We find this argument to be without merit for the reasons set forth above in our discussion of the appellant's similar challenge based on statutory grounds.

its order and decision is warranted by the facts." *See also Consolidated Freightways, etc. v. PUC*, 158 Colo. 239, 252, 406 P.2d 83 (1965).

A review of the trial court's rulings and judgment in this case clearly satisfies the statutory requirement. Specifically, having determined that there was substantial evidence in the record to support the PUC's decision, we further find nothing in the record which would indicate that the PUC either exceeded its jurisdiction or abused its discretion. The record before the district court fully supports its judgment affirming the PUC's decision.

We find the remaining issues presented by this appeal are wholly without merit or not properly before us on appeal. *See* section 40–6–114(1) and (5), C.R.S.1973.

The judgment is affirmed.